OPINION
{¶ 1} Plaintiff-appellant, Charles Leightner, appeals a decision of the Mahoning County Common Pleas Court awarding summary judgment to defendant-appellee, Cafaro-Ross Partnership, on his claim for personal injury resulting from a fall.
 {¶ 2} On January 13, 1999, appellant drove to the Office Depot located in the Eastwood Mall, which is owned and maintained by appellee. As appellant was returning to his car from shopping, he stepped on a piece of ice and fell. As a result he broke his leg.
 {¶ 3} On September 30, 1999, appellant and his wife, Paula, filed a complaint alleging negligence on the part of appellee and defendant John Doe Snow Removal Company in creating and/or failing to remove the ice. Appellant sought damages for his physical injuries and economic damages resulting from lost wages and lost profits. Paula sought damages for the loss of her husband's services, companionship, and consortium. Appellee filed an answer on December 3, 1999, denying any negligence and setting forth various affirmative defenses. Appellee also identified R R Construction as the independent contractor that it hired to plow and remove snow at the premises. However, appellant never sought to amend the complaint to name the company and, therefore, it never became a party to the proceedings. See Civ.R. 15(D).
 {¶ 4} Subsequently, appellee filed a motion for summary judgment on April 30, 2001, arguing that no issue of material facts existed and they were entitled to judgment as a matter of law. Specifically, appellee argued that appellant's fall was the result of a natural accumulation of ice and snow which it had no duty to remove and for which it could not be liable to appellants. Appellee also argued that the condition which caused appellant's fall was open and obvious and one of which he was well aware of at the time of the fall. Appellant responded with a memorandum in opposition on June 8, 2001, and appellee replied on June 25, 2001. The trial court granted appellee's motion for summary judgment on June 26, 2001. In its decision, the court concluded that appellant slipped on a natural accumulation of ice and snow which appellee had no duty to remove. The court also noted that the condition was open and obvious which appellant had a duty to avoid. On July 20, 2001, appellant filed a notice of appeal.
 {¶ 5} Appellant raises a single assignment of error on appeal which contains three issues presented for this court's review. Appellant's assignment of error reads:
 {¶ 6} "The trial court erred in granting Summary Judgment in favor of Defendant-Appellee."
STANDARD OF REVIEW
 {¶ 7} An appellate court reviews a trial court's decision on a motion for summary judgment de novo. Grafton v. Ohio Edison Co. (1996),77 Ohio St.3d 102, 105. Summary judgment is properly granted when: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made. Harless v. WillisDay Warehousing Co._(1976), 54 Ohio St.2d 64, 66; Civ.R. 56(C).
 {¶ 8} "[A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. * * *" (Emphasis sic.)Dresher v. Burt (1996), 75 Ohio St.3d 280, 293.
 {¶ 9} The "portions of the record" or evidentiary materials listed in Civ.R. 56(C) include the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact that have been filed in the case. The court is obligated to view all the evidentiary material in a light most favorable to the nonmoving party. Temple v. Wean United, Inc.
(1977), 50 Ohio St.2d 317.
 {¶ 10} "If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." Dresher, 75 Ohio St.3d at 293.
 {¶ 11} Summary judgment is appropriate when there is no genuine issue as to any material fact. A "material fact" depends on the substantive law of the claim being litigated. Hoyt, Inc. v. Gordon Assoc., Inc. (1995), 104 Ohio App.3d 598, 603, citing Anderson v. LibertyLobby, Inc. (1986), 477 U.S. 242, 247-248. The essential elements of negligence cause of action are a duty, breach of duty, and injury resulting proximately therefrom. Strother v. Hutchinson (1981),67 Ohio St.2d 282, 285.
 {¶ 12} Appellant's first issue presented for review reads:
 {¶ 13} "The trial court erred in finding that the Defendant-Appellee owed no duty to Appellant."
 {¶ 14} Appellant argues that the trial court erred in finding that appellee had no duty to remove the natural accumulation of ice and snow. Appellant asserts that appellee contractually obligated itself to remove snow from the parking lot. Appellant further argues that once a premises owner acts to remove snow and ice, it must do so in a non-negligent manner.
 {¶ 15} In DeSalvo v. Edward J. DeBartolo Corp. (Dec. 16, 1998), 7th Dist. No. 96 CA 229, this court discussed the duty a business owner owes to invitees concerning accumulations of ice and/or snow as follows:
 {¶ 16} "In Ohio, an owner of business premises owes a duty to exercise reasonable care in maintaining the premises in a safe condition for the use of business invitees. Perry v. Eastgreen Realty Co. (1978),53 Ohio St.2d 51. However, the Ohio Supreme Court has held on repeated occasions that this duty does not extend to natural accumulations of ice and snow. On the contrary, an owner of property is not liable for injuries to business invitees who slip and fall on natural accumulations of ice. LaCourse v. Fleitz (1986), 28 Ohio St.3d 209, 210, citing Debiev. Cochran Pharmacy-Berwick, Inc. (1967), 11 Ohio St.2d 38. `The common thread running through these cases is the principle that the owner or occupier has a right to assume that his visitors will appreciate the risk and take action to protect themselves accordingly.' LaCourse, supra. Liability will only be found to attach under circumstances where the individual may not reasonably be expected to discover or fully appreciate the risk before him. Debie, supra. The Ohio Supreme Court has long recognized that the inclement weather in Ohio makes it difficult for a premises owner to continually patrol the area and remedy the conditions.Norwalk v. Tuttle (1906), 73 Ohio St. 242, 245."
 {¶ 17} While acknowledging that there exists no common law duty to remove natural accumulations of snow, appellant cites to Williams-Wogev. Greenbriar Common Condominium Owners Assn. (Sept. 1, 1994), 8th Dist. No. 65771, where the Eighth Appellate District held that "a duty to remove natural accumulations of ice and snow may arise by operation of an express agreement." As evidence of an express agreement, appellant points to appellee's answer in which it admitted that (1) it owned the parking lot, (2) it was contractually obligated to maintain the parking lot, and (3) it employed the services of an independent contractor to remove snow from the parking lot.
 {¶ 18} Appellant's reliance on Williams-Woge is misplaced. InWilliams-Woge, the express agreement was between a condominium association, its management, and its resident who slipped on some ice. In that case, the plaintiff was a party to the agreement. In this case, appellant was not a party to the agreement between appellee and the independent contractor it hired to remove snow.
 {¶ 19} Appellant's second issue presented for review reads:
 {¶ 20} "The trial court erred in finding that the condition of the Parking lot was a natural accumulation of snow."
 {¶ 21} Appellant's third issue presented for review reads:
 {¶ 22} "Premise owners remain liable for hazards they create even though the hazard is obscured by a natural accumulation of snow."
 {¶ 23} Appellant argues that the trial court erred in concluding that his fall happened as the result of a natural accumulation of ice and snow. Appellant also argues that appellee was negligent in creating and allowing the ice pieces to remain despite a natural accumulation of snow that began while he was in the store.
 {¶ 24} The only evidence before the trial court on this issue was appellant's deposition testimony describing the weather conditions that day and the piece of ice he fell on. That testimony went as follows:
 {¶ 25} "Q With respect to the incident of January, [sic] 13, 1999, would you tell me what happened?
 {¶ 26} "A My secretary was sick that day, and I heard on the radio that there was a storm coming. In fact, my wife called me and told me that there was a big storm coming, I ran out of laser Mylars for a presentation that I was going to give the next day up in Ashtabula and Conneaut.
 {¶ 27} "Not having my secretary there who normally went out and got the supplies, I thought, well, I'll get in the car; I'll drive over to one of the office supply places and pick up the Mylars, come back, finish the stuff, get it ready take it home with me tonight, and I can leave early in the morning if there's a lot of snow and get there in plenty of time because I had like 40 people attending this thing.
 {¶ 28} "I drove over to Office Depot that was a new facility that had just opened, I guess, two or three months earlier in the Eastwood Mall area and pulled my car into the parking lot. It was like somewhere around lunchtime, and I noticed there was a big pile of ice and snow where the lanes come together. I couldn't get my car all the way up. I parked as close to the door as I could because I could see the over — it was dark. There was a storm coming. And I can remember two things, one there was a big pile of like dark — it was dirty snow and ice from some previous snowplowing that they had done, and it was all crusted over, and there were chunks rolled down where you park the cars, plus — which I'm assuming were like on the mud flaps in the back of cars, little round circles of ice that fall off in the parking lot. They were all over the parking lot there.
 {¶ 29} "I pulled in. I couldn't get my car in all the way. I parked it at an angle. I got out of the car. I went into the store. I purchased the Mylars that I needed. There was one other lady in the store shopping at the time, and I passed her, and I think we said something about, boy, there's a big storm coming. I said, yeah, I know. That's why I'm over here to get this.
 {¶ 30} "By the time I got outside, it started snowing, and it was a blizzard. I mean, it was really coming down. It was unbelievable. I walked out to my car, and in the meantime, a lady had pulled this gold van up next to my car, and, in fact, my car was running. I left it running because I figured I'd only be inside for a few minutes, and it was cold out that day. I came out; walked around this lady's van. I stepped on a chunk of ice with my left foot. As I recall, it was about the size of a grapefruit. because I can remember thinking my foot was going to go all the way down to the ground, and it didn't. It slipped out to the right. * * *
 {¶ 31} "* * *
 {¶ 32} "Q Was the parking lot surface snow covered, snow and ice covered, or was it clear down to the pavement?
 {¶ 33} "A As I recall, there was some ice on it with these chunks, and then they had this big pile like the whole way up along the middle of the — between the two parking areas, you know how they pile it up in the winter? It was piled up. As I remember, it was like four or five feet high. And there was ice, these ice chunks, and there was some ice on the parking lot, but there was no snow, as I recall, on the parking lot." (Tr. 63-66, 69)
 {¶ 34} In reaching its conclusion that appellant's fall happened as the result of a natural accumulation of ice and snow, the trial court highlighted the conditions that existed as appellant left the store. Appellant described those conditions as follows:
 {¶ 35} "Q When you exited, was it snowing?
 {¶ 36} "A Yes.
 {¶ 37} "Q I think earlier you used the word blizzard?
 {¶ 38} "A Yeah, it was bad.
 {¶ 39} "Q So snowing so hard that you had difficulty seeing the van and where your car was parked?
 {¶ 40} "A Yeah, it was. It was snowing hard because I thought — the first thing I thought of was I didn't have a hat. I usually take a hat with me. And by the time I walked from the building to my car, I knew I was — my head was going to be soaked.
 {¶ 41} "Q Were those areas of the parking lot that had previously been cleared to the pavement when you entered now covered with snow as you exited?
 {¶ 42} "A There was — there was snow on the parking lot. That's all I can tell you. I don't know if it was a quarter inch, two inches. But there was a lot of snow on the parking lot, and it was blowing. It was windy. I guess that was — you know, that was the thing that made the — like you want to say the visibility was worse. It was like swirling around the building and the cars and everything. It was blowing and like powdery snow.
 {¶ 43} "Q Did you have any difficulty with your footing as you traversed the parking lot up to the moment that you actually fell?
 {¶ 44} "A Well, I was very careful. Let's put it that way. I was very careful walking across the street. I made sure there wasn't any cars coming, and when I got up to about where the van was parked, I was trying to see if there were any of those chunks of ice on the — I mean, there wasn't just a couple. That parking lot was covered. There were probably 15 or 20 of these black balls of ice laying around by my car. I know that for a fact when I got out of my car.
 {¶ 45} "Q When you saw those, when you exited your car —
 {¶ 46} "A When I went into the store.
 {¶ 47} "Q And how big were those 15 to 20 chunks?
 {¶ 48} "A I'd say anywhere from — I remember them being about the size of grapefruits, and there were some that were like half moons where they fell off the back fenders of cars.
 {¶ 49} "Q Were any of those ones that you had seen as you exited and entered the store one of the ones involved in your fall, intimately involved in your fall?
 {¶ 50} "A I really can't say for a fact because I know I stepped on something that was about four inches high. And that's what — and before I could stop putting my weight on it, my foot slipped off of it and cocked out to the right, and I'm assuming it was a piece of that ice." (Tr. 77-79)
 {¶ 51} In DeSalvo v. Edward J. DeBartolo Corp. (Dec. 16, 1998), 7th Dist. No. 96 CA 229, this court discussed the difference between a natural and unnatural accumulation of ice or snow as follows:
 {¶ 52} "The courts have previously differentiated between what is to be considered a natural accumulation as compared to an unnatural accumulation. A natural accumulation of ice and/or snow has been determined to be that which accumulates as a result of an act of nature.Perazzo v. Dayton Hasty-Tasty, Inc. (1962), 119 Ohio App. 453, 458. In comparison, an unnatural accumulation is one that has been created by causes and factors other than the inclement weather conditions of low temperature, strong winds and drifting snow. Porter v. Miller (1983),13 Ohio App.3d 93, 95. Therefore, for an accumulation to be labeled as unnatural, causes other than meteorological forces of nature must be responsible. Snow which melts and later refreezes into ice is considered a natural accumulation of ice caused by forces of nature. Kinkey v.Jewish Hospital Assn. of Cincinnati (1968), 16 Ohio App.2d 93, 96.
 {¶ 53} "In the event a property owner voluntarily chooses to remove a natural accumulation of ice or snow, he may not create a dangerous or unnatural accumulation or be actively negligent in permitting one to exist. Lopatkovich v. Tiffin (1986), 28 Ohio St.3d 204,207. In cases which involve an unnatural accumulation of ice as the cause of a fall, a plaintiff must show that: (1) the defendant created or aggravated the hazard; (2) the defendant knew or should have known of the hazard; and (3) the hazardous condition was substantially more dangerous than it would have been in the natural state. Porter, supra."
 {¶ 54} When construing the evidentiary material in a light most favorable to appellant, it is arguable whether appellant's fall was caused by a natural or unnatural accumulation of ice. In his deposition testimony, he described the ice as chunks of ice the size of a grapefruit and discolored. This is rather large for a natural accumulation of ice and not consistent with the normal color of ice. To that extent, it appears that the trial court may have erred in concluding that appellant's fall was the result of a natural accumulation of ice and snow. Instead, it appears more likely that appellant's fall was the result of a chunk of ice created by the effect of previous natural accumulations of snow and ice being plowed into a pile.
 {¶ 55} The question then becomes whether appellee was negligent in creating the condition that led to appellant's fall. As already indicated, there remains a genuine issue of material fact whether appellee created an unnatural accumulation of ice and snow by plowing the parking lot. It is also arguable that the pile of snow resulting from the plowing created a hazard. However, the pile of snow was not substantially more dangerous than it would have been in its natural state. The snow had to be piled somewhere and it should not be unexpected that balls or chunks of ice and snow would result and roll away from the pile. Also, because of the storm and the harsh winter conditions on the day that appellant fell, conditions were hazardous to begin with. To conclude otherwise would discourage owners or occupiers of land from attempting to clear snow and ice that may accumulate on their property. As ice inevitably will be present in very cold conditions, owners or occupiers of land should not be subjected to increased exposure to liability merely because ice remains after they have made an effort to clear their lots.
 {¶ 56} In sum, having reviewed the record and, upon consideration thereof and the law, it appears that there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of appellant, reasonable minds could only conclude that he failed to support the necessary elements of each of his causes of action and appellee is entitled to judgment as a matter of law.
 {¶ 57} Accordingly, appellant's sole assignment of error is without merit.
 {¶ 58} The judgment of the trial court is hereby affirmed.
Vukovich, J., concurs.
DeGenaro, J., concurs.